fore the property is delivered over, and those which require it before the issuing of the writ. In this case no bond was ever given. It is not merely a case of insufficiency of sureties, which may be renewed by order of the court. The relator procured the execution of the bond by sureties whom he knew to be utterly irresponsible, and at least one of whom forged the signature of a fictitious person.

The position assumed by relator is, that if the writ upon its face authorized the taking, which is the subject of the larceny for which he is indicted, he "is entitled to his discharge, notwithstanding the writ was procured by perjury, and used for the purpose of committing a larceny. Counsel cannot have fully apprehended the consequences of this doctrine. May a deputy marshal holding a capias of this court deliberately murder the party he is seeking to arrest? There is no general power in the federal courts to punish murder, and if discharged from the custody of the state, his crime would go practically unpunished. This court, I think, is bound to inquire into the legality of the use as well as of the validity of the process itself. This was the view evidently taken by the learned judge for the district of Kentucky in the Roberts' Case, above cited.[2]

In Com. v. Low, Thacher's Cr. Cas. 477, it was held that, if a man having a right of action makes use of a process which he knows he has no right to adopt, to get the property of his debtor, and with intent to defraud him, it is larceny.

It is well settled that a combination of two or more to accomplish a lawful purpose by unlawful means is indictable as a conspiracy. Says Lord Hale, P. C. 507: "A. has the mind to get the goods of B. into his possession, privately delivers an ejectment, and obtains judgment against a casual ejector, and thereby gets possession and takes the goods. If it were animo furandi, it is larceny." So Lord Coke, 3 Inst. 108: "If a man seeing the horse of B. in his pasture, and having a mind to steal him, cometh to the sheriff, and, pretending the horse to be his, obtaineth the horse to be delivered to him by replevin, yet this is a felonious and fraudulent taking."

I have not lost sight of the concession in this case, that relator supposed he was entitled to the possession of this property. The question here is not whether he was entitled to the possession of the property, nor whether he was guilty of larceny in obtaining possession, not even whether he was entitled to possession, but whether he was justified by his writ in obtaining this possession. Now, nothing is better settled in the law of trespass than that an officer entitled to levy upon property becomes a trespasser ab initio by an abuse of the process. I am sat-

isfied in this case that the relator commenced this suit, not for the purpose of asserting a bona fide claim to the property, but of spiriting it away under the forms of law, and disposing of it before proceedings could be taken for its reclamation. It would be a strange interpretation of the law if, having been guilty of forgery, fraud, and subornation of perjury in procuring the process of this court, he could still claim to be protected by it in carrying out his schemes. I hold then, that, although the marshal was protected by this writ in what he did in execution thereof, yet as to the relator in this case it was fraudulent and void, and that so far from being entitled to protection by this court, his case should be laid before the next grand jury of this district for such action as it may see fit to take, and the district attorney is directed to see that this is done; provided, however, that no action be taken on any indictment until he shall have been discharged by a state court.

It results that the prisoner must be remanded to the custody of the sheriff of Shelby county.

---

## Case No. 13,935.

### In re THOMPSON.

[2 Ben. 166;[1] 1 N. B. R. 323 (Quarto, 65).]

District Court, S. D. New York. Feb., 1868.

BANKRUPTCY — EXAMINATION OF BANKRUPT — DISCHARGE—ADJOURNMENT.

The pendency of an examination of the bankrupt is good cause for an adjournment of the proceedings, on the order to show cause why the bankrupt should not be discharged.

[Cited in Re Seabury, Case No. 12,573.]

[In the matter of John Thompson, a bankrupt.]

BY ISAAC DAYTON, Register:

[The order for creditors to show cause why the above bankrupt should not be discharged, being returnable on the 18th day of February, 1868, at eleven o'clock, the bankrupt with his counsel, Mr. E. More, appeared before me, and Mr. G. A. Seixas, duly appeared for the Merchant's Exchange Bank, a creditor having duly proved his debt, and having by letter of attorney duly authorized Mr. Seixas to appear, &c. An examination of the bankrupt, pursuant to an order of this court, is now going on before me, the same having been carried on and adjourned from day to day for several days, and having been this day continued and not concluded.

[Mr. Seixas thereupon requested that all proceedings upon the return of said order to show cause be adjourned, pending the examination of the bankrupt and others.

[Mr. More, on behalf of the bankrupt, objected to any adjournment on the ground that, unless Mr. Seixas should first enter his appearance under rule 24, it would be irregu-

---

[2] See Case of U. S. ex rel. v. Weeden [Case No. 14,412], where the ruling in the Roberts Case has been modified.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

lar to so adjourn the proceedings as to enable a creditor to enter his appearance in opposition to the discharge at a future day.

[Mr. Seixas claimed and insisted that an adjournment of the hearing and proceedings, upon the order to show cause, necessarily operates to extend the time for a creditor to enter his appearance in opposition, and that the rights of a creditor on the adjourned day of the order to show cause, are the same in all respects as on the return day.

[The opinion of the register is, that the pendency of the examination of the bankrupt constitutes good cause, under the 6th general rule, for adjourning the business of showing cause, and that such adjournment can properly be made without requiring the creditors to file an appearance under rule 24, objecting to the discharge. I accordingly adjourned the business to a day agreed upon by the parties. The bankrupt thereupon requests me to certify my opinion to the court, which I now respectfully do.][2]

BLATCHFORD, District Judge. The register was correct in his decision.

## Case No. 13,936.

### In re THOMPSON et al.

[2 Biss. 166; 3 N. B. R. 184 (Quarto. 45); 16 Pittsb. Leg. J. 85; 2 Am. Law T. 107; 1 Chi. Leg. News, 345; 1 Leg. Gaz. 46; 1 Am. Law T. Rep. Bankr. 137.][1]

District Court, N. D. Illinois. July Term, 1869.

BANKRUPTCY — STOPPING PAYMENTS — CONSTRUCTION OF STATUTE—REFUSAL ON GROUND OF LEGAL DEFENSE.

1. In the 39th section of the bankrupt law [of 1867 (14 Stat. 536)]. "has fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days." the word "fraudulently" should be construed as limiting "stopped" only, and the words "fourteen days" as applying only to the suspension, &c.

[Cited in Re Hercules Mut. Life Assur. Soc., Case No. 6,402.]

[Cited in Lindsey v. Flebbe (Colo. App.) 38 Pac. 399.]

2. When the stoppage is fraudulent it is not necessary that it be continued, and a suspension of payment for fourteen days, though without any element of fraud, constitutes an act of bankruptcy.

[Cited in Baldwin v. Wilder, Case No. 806; Re Hercules Mut. Life Assur. Soc., Id. 6,-402.]

[Cited in Marble v. Jamesville Manuf'g Co. (Mass.) 39 N. E. 1002.]

[See In re Ballard. Case No. 816.]

3. A refusal on the ground of a legal defense, is not a stoppage or suspension within the meaning of the law.

In bankruptcy. This was an involuntary petition alleging that Thompson and Mc-Clallen committed an act of bankruptcy within six calendar months next preceding

the date of filing the petition, in that they, being merchants, on the 2d day of January, 1869, suspended, and have not resumed payment of their commercial paper within the period of fourteen days, setting forth what the commercial paper was. Respondents filed a general demurrer.

Bentley & Hart, for creditors.
C. C. Bonney, for respondent.

DRUMMOND, District Judge. [This is a very important question undoubtedly, but it is one that has been before me on several occasions, and although there never has been an express adjudication on the point, still, incidentally, I have expressed an opinion as to the true construction of this clause of the bankrupt law; and inasmuch as I have a decided opinion upon it, I might as well state that opinion now, with some of the reasons upon which it is formed.][2]

An objection is taken on the part of Thompson and McClallen that this is not an act of bankruptcy within the meaning of the law. The clause of the 39th section of the bankrupt law under which the question arises is this: "Or who, being a banker, merchant or trader, has fraudulently stopped or suspended, and not resumed payment of his commercial paper within the period of fourteen days."

That constitutes an act of bankruptcy on the part of any person who is within the conditions named, and the only question, as I conceive, is whether the word "fraudulently" applies to and qualifies the whole of the clause—whether it is to be read as if written: "who, being a banker, merchant or trader, has fraudulently stopped or fraudulently suspended, and not resumed payment of his commercial paper within the period of fourteen days," or whether it is to be read as if written in this way: "or who, being a banker, merchant or trader, has fraudulently stopped" payment of his commercial paper; or who, being a banker, merchant or trader, has "suspended and not resumed payment of his commercial paper within a period of fourteen days," applying the words "fourteen days" to the suspension only. and without the use of the word "fraudulently"; and I think the latter is the true construction. It would seem to be unreasonable to say that in order to constitute an act of bankruptcy, a merchant, banker or trader must stop during fourteen days by a continuous act of fraud. It would seem as though one act of fraud, by stopping payment of his commercial paper, committed by a banker, merchant or trader, should constitute an act of bankruptcy. There is no reason why there should be a continued fraud for the period of fourteen days, in order to constitute an act of bankruptcy; because where a merchant, banker or trader—and who is there-

[2] [From 1 N. B. R. 323 (Quarto, 65).]

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission. 1 Leg. Gaz. 46, contains only a partial report.]

[2] [From 3 N. B. R. 184 (Quarto, 45).]